UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| MARK VADNAIS, | ) | |
| Plaintiff | ) | |
| | ) | |
| | ) | |
| v. | ) | Civil Action No. 09-30001-KPN |
| | ) | |
| | ) | |
| NSK STEERING SYSTEMS | ) | |
| AMERICA, INC., | ) | |
| Defendant | ) | |

MEMORANDUM AND ORDER WITH REGARD TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT (Document No. 26)
March 22, 2010

NEIMAN, U.S.M.J.

Mark Vadnais ("Plaintiff") brings this complaint against NSK Steering Systems America, Inc. ("Defendant") with respect to Defendant's termination of his employment in March of 2007. Plaintiff originally made five claims, but, on November 20, 2009, the court granted summary judgment as to Count I, Plaintiff's breach of contract claim based on Defendant's failure to honor a proposed termination agreement. Thereafter, on December 16, 2009, Plaintiff voluntarily dismissed Count II, his age discrimination claim. As a result, only three claims remain, all of which Defendant now challenges via the present motion for summary judgment: Plaintiff's breach of contract claim for termination of employment while engaged in the Corrective Action System (Count III); Plaintiff's claim alleging breach of an implied contract of employment for terminating him without cause (Count IV); and Plaintiff's claim for breach of the implied covenant of good faith and fair dealing in terminating his employment (Count V).

The parties have jointly consented to the jurisdiction of this court pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.  For the reasons that follow, Defendant's motion for summary judgment will be allowed in full.

## I.  STANDARD OF REVIEW

When ruling on a motion for summary judgment, the court must construe the facts in a light most favorable to the non-moving party.  *Benoit v. Tech. Mfg. Corp.*, 331 F.3d 166, 173 (1st Cir. 2003).  Summary judgment is appropriate when "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  An issue is "genuine" when the evidence is such that a reasonable fact-finder could resolve the point in favor of the non-moving party, and a fact is "material" when it might affect the outcome of the suit under the applicable law.  *Morris v. Gov't Dev. Bank*, 27 F.3d 746, 748 (1st Cir. 1994).  The non-moving party bears the burden of placing at least one material fact into dispute after the moving party shows the absence of any disputed material fact.  *Mendes v. Medtronic, Inc.*, 18 F.3d 13, 15 (1st Cir. 1994) (discussing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

## II.  BACKGROUND

The parties agree with the following facts which are construed in a light most favorable to Plaintiff.  Plaintiff was employed by Defendant, a Vermont company, from February 14, 1989, to March 28, 2007.  (Def.' Facts ¶ 1; Compl. ¶ 2.)  His employment was terminated on March 28, 2007, as part of a reduction in force.  (Def.'s Facts ¶¶ 2, 7.)  Defendant, which produces car parts, has been drastically affected by the current

economy.  (*Id.* ¶ 2.)  Indeed, since Plaintiff's dismissal, hundreds more employees have

been laid off because of the economy.  (*Id.*)

On the right, according to Defendant's handbook, Plaintiff was an "at-will" employee.  (*Id.* ¶

3.)  Specifically, section 1 of the handbook provides as follows:

> Employment At Will
>
> Your NSSA Team Member handbook has been designed to
> provide you with [basic] information about NSSA.  This
> handbook was not designed to create nor should it be
> construed to constitute a contract of employment between
> NSSA and any one or all of its Team Members.
>
> NSSA reserves the right to change or vary its practices and
> benefits discussed in this manual, as it deems necessary, to
> effectively operate its business.  NSSA's policy is to hire its
> Team Members "AT WILL".  That is, NSSA has the right to
> change the terms of employment or even terminate at will,
> with or without notice, as it deems necessary.  Likewise, a
> Team Member may terminate employment with or without
> notice, as he or she deems necessary.  Statements within
> this S.O.P. Guide are in no way intended to change a Team
> Member's "AT WILL" employment relationship with NSSA.

(*Id.*)  Plaintiff received a copy of the handbook and conceded at his deposition that he

did not have a contract with Defendant that he was going to work any specific amount

of time.  (*Id.* ¶ 4.)

The handbook also has a Corrective Action System and, on November 6, 2006,

Plaintiff actually underwent "Step 1" of that system.  (*Id.* ¶¶ 5, 6.)  The Corrective Action

System, however, does not indicate that a person who is proceeding thereunder cannot

be subject to a reduction in force; moreover, there is no guarantee that a person in

corrective action will not be terminated until they go through all steps of the system.

(*Id.* ¶ 8.)  In any event, Defendant's human resources manager testified at his deposition that the choice of including Plaintiff in the reduction in force was probably influenced somewhat by the fact that his performance was less than desired.  (*Id.* ¶ 7.)

Without objecting to the above facts, Plaintiff notes that, when he was terminated on March 28, 2007, he was offered a severance package via a "Release of Claims and Settlement Agreement."  (Pl.'s Facts ¶ 2.)  As detailed more fully in the court's prior memorandum and order, the Release of Claims and Settlement Agreement offered Plaintiff six months salary and seven months insurance coverage in exchange for his release of any and all claims he might otherwise have against Defendant.  (*Id.* ¶ 3.)

In addition, Plaintiff notes, the Release of Claims and Settlement Agreement advised Plaintiff to consult with an attorney before signing.  (*Id.* ¶ 4.)  Plaintiff did, in fact, consult with an attorney who directed correspondence to Defendant -- Plaintiff calls it a "settlement offer" -- on April 9, 2007.  (*Id.* ¶ 5.)  According to Plaintiff, his counsel followed up with Defendant on diverse occasions thereafter, but he never received a written response and was never advised that the settlement offer had been withdrawn.  (*Id.* ¶¶ 6, 7.)  Moreover, Plaintiff notes that Defendant's human resources manager testified that he had never modified the Release of Claims and Settlement Agreement for anyone and had no intention of doing so with Plaintiff.  (*Id.* ¶¶ 8, 9.)

### III. DISCUSSION

Defendant's summary judgment motion is straightforward and well-argued. According to Defendant, it is entitled to judgment on all three of the remaining "contract"-based counts because there can be no genuine issue of material fact that

Plaintiff was an "at-will" employee who could be terminated for any reason, particularly as part of a reduction in force.  *See Taylor v. Nat'l Life Ins. Co.*, 652 A.2d 466, 473 (Vt. 1993).[1]  Thus, Defendant argues, Plaintiff cannot assert, as he attempts in Count III, that he could only be terminated after he had completed the Corrective Action System.

To be sure, Defendant acknowledges that personnel manual provisions that are inconsistent with an at-will relationship may be used as evidence that there is a contract of employment which requires "good cause" for termination.  *Id.* at 471. However, Vermont law also provides that economic circumstances that necessitate employer layoffs, such as those that occurred here, constitute good cause for termination.  *Id.* at 472.  Accordingly, Defendant argues, since Plaintiff has not shown that "good cause" for his termination was lacking, Count III cannot survive.  For similar reasons, Defendant continues, Plaintiff's claims under Counts IV (breach of an implied contract of employment for terminating him without cause) and V (breach of the implied covenant of good faith and fair dealing) must fail as well.

Plaintiff's opposition memorandum adds nothing substantial to this analysis.  For example, regarding Count III, Plaintiff argues only that the Corrective Action System states that it is to be "used progressively, with termination occurring only after other appropriate measures have proven unsuccessful," that the system was not used progressively with regard to him, and that, therefore, he should be entitled to sue for breach of contract.  Plaintiff, however, never addresses Vermont's "good cause"

---

[1]  For present purposes, Defendant contends, without objection from Plaintiff, that Vermont law applies here.

requirement; in other words, even assuming there was a contract, Plaintiff raises no genuine issue of fact, as would be required, that anything other than good cause undergirded his termination.  Moreover, Plaintiff neglects to mention that the Corrective Action System's progressive discipline is intended to be used "in most cases," *i.e.*, that it clearly allows Defendant to terminate employees as part of a reduction in force. Finally, and perhaps most importantly, Plaintiff fails to acknowledge, or argue to the contrary, that the handbook specifically indicates that it does not constitute an employment contract or that he was an "AT-WILL" employee.  For all these reasons, summary judgment must enter in Defendant's favor on Count III.

As for Count IV, Plaintiff proffers a somewhat confusing argument challenging the personnel handbook itself.  According to Plaintiff, Defendant "fails to document when the handbook was drafted, when it went into effect, and at what point in the Plaintiff's employment tenure the Plaintiff allegedly received the handbook."  (Pl.'s Brief at 9.)  It appears that Plaintiff is trying to raise an issue of fact with regard to the handbook.  (See id. ("The application of the terms of the handbook would be a question of fact for determination by the jury.").)  But to what end?  Plaintiff offers no argument, let alone case law, as to why he should be entitled to continue to pursue his Count IV claim for breach of an implied contract of employment for terminating him without cause.  Or, as Defendant puts it, "if the handbook was not applicable to [P]laintiff, then [P]laintiff has no factual basis for an argument that he had any contractual right to employment."  (Def.'s Reply at 5.)  Accordingly, summary judgment will enter in Defendant's favor on Count IV as well.

6

Finally, regarding Count V, Plaintiff argues only that Defendant's refusal to negotiate the severance package, after his termination, constituted a breach of the implied covenant of good faith and fair dealing.  Plaintiff, however, is not allowed to re-cast Count V to encompass *post*-termination actions inasmuch as his complaint was limited solely to his layoff.  (See Compl. ¶ 34 ("[T]he termination of [Plaintiff's] employment constituted . . . breach of the implied covenant of good faith and fair dealing.").)  Plaintiff also cites no case law, other than a few boilerplate decisions which simply indicate that courts should be slow to grant summary judgment in cases where a party's state of mind is at issue; that case law is not applicable here.  In addition, and maybe most egregiously, Plaintiff fails to observe that, "in the absence of a contract, there can be no breach of an implied covenant of good faith and fair dealing."  *McHugh v. Univ. of Vermont*, 758 F. Supp. 945, 953 (D. Vt. 1991) (citation and internal quotation marks omitted).  In the end, therefore, summary judgment will enter in Defendant's favor on Count V as well.

## IV.  CONCLUSION

For the reasons stated, Defendant's motion for summary judgment on the remaining counts (Counts III, IV and V) is ALLOWED.  This case may now be closed.

IT IS SO ORDERED.

DATED: March 22, 2010

  /s/ Kenneth P. Neiman
KENNETH P. NEIMAN
U.S. Magistrate Judge